Case No. 15-72844

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE THE CENTER FOR MEDICAL PROGRESS; BIOMAX
PROCUREMENT SERVICES, LLC; and DAVID DALEIDEN

THE CENTER FOR MEDICAL PROGRESS; BIOMAX PROCUREMENT
SERVICES, LLC; DAVID DALEIDEN,
Defendants-Petitioners,

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA, Respondent,

NATIONAL ABORTION FEDERATION, Plaintiff-Real Party in Interest

From the United States District Court
Northern District of California
The Honorable William H. Orrick, III, Presiding
Case No. 3:15-cv-3522 (WHO)

## REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS

D. John Sauer
James Otis Law Group, LLC
231 South Bemiston Ave., Suite 800
St. Louis, Missouri 63105
(314) 854-1372
jsauer@jamesotis.com

Attorney for Defendants and
Petitioners The Center For Medical
Progress, Biomax Procurement
Services, LLC, and David Daleiden

Catherine W. Short; SBN 117442
Post Office Box 1313
Ojai, California 93024-1313
Tel: (707) 337-6880
Fax: (805) 640-1940
LLDFOjai@earthlink.net

Additional counsel listed on signature
page

## TABLE OF CONTENTS

I.   The TRO, Any Further Injunctive Relief, and the Discovery Order All Constitute Unconstitutional Prior Restraints. ...........................................................1

  A.  CMP properly preserved the question whether NAF's claim for injunctive relief must be denied as a matter of law. .................................................................1

  B.  NAF fails to identify an interest that could justify a prior restraint. ...............2

    1.   Any "waiver" of CMP's right to speak is plainly unenforceable. ...............2

    2.   NAF's asserted interest in protecting its members from threats and violence by third parties cannot justify a prior restraint.....................................6

  C.  As conceived by NAF and the District Court, the discovery order is an unconstitutional pre-approval process for CMP's future speech. .........................8

II.  The Anti-SLAPP Motion Stayed Discovery by Operation of Law....................12

CONCLUSION ......................................................................................................15

i

TABLE OF AUTHORITIES

<u>**CASES**</u>

*Animal Legal Def. Fund v. Otter*, -- F.3d --, 2015 WL 4623943 (D. Idaho Aug. 3, 2015)……………………………………………………………..6

*Bartnicki v. Vopper*, 532 U.S. 415 (2001) ……………………………………11

*Bank Julius Baer & Co. v. Wikileaks*, 535 F. Supp. 2d 980 (N.D. Cal. 2008) …..11

*Bd. of Educ. v. Pico*, 457 U.S. 853 (1982)……………………………….......… 3

*Branzburg v. Hayes*, 408 U.S. 665, 696 (1972) …………………………………...4

*Brooks v. Vallejo City Unified Sch. Dist.*, Case No. 2:09-cv-1815, 2009 WL 10441783 (E.D. Cal. Oct. 30, 2009) …………………………………...4-5

*Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047 (9th Cir. 2011)….5

*Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175 (1968)……….11

*CBS, Inc. v. Davis*, 510 U.S. 1315 (1994)………………………………………10-11

*Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991)………………………………...4

*Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967)…………………………………..2

*Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390 (9th Cir. 1991)……..2

*Davis v. Electronic Arts, Inc.*, No. C-10-03328 RS DMR, 2011 WL 2621626 (N.D. Cal. July 5, 2011) …………………………………………………14, 15

*Davis v. Electronic Arts, Inc.*, Case 3:10-cv-03328-RS (N.D. Cal.), CM/ECF, Doc. 20 ……………………………………………………………………15

*Dietemann v. Time, Inc.*, 449 F.2d 245 (9th Cir. 1971) …………………………...4

*Doe v. Gangland Prods., Inc.*, 730 F.3d 946 (9th Cir. 2013)……………………12

*DVD Copy Control Ass'n v. Bunner*, 31 Cal.4th 864 (2003) ……………………...5

*Elrod v. Burns*, 427 U.S. 347 (1976)…………………………………………………..15

*Flatley v. Mauro*, 39 Cal.4th 299 (2006)……………………………………………12

*FTC v. Standard Fin. Mgt. Corp.*, 830 F.2d 404 (1st Cir. 1987) ………………….6

*Garcia v. Google, Inc.*, 786 F.3d 727 (9th Cir. 2015)……………………….3, 7, 9

*Goldblum v. NBC*, 584 F.2d 904 (9th Cir. 1987) …………………………….....9, 10

*Goldman v. Seawind Group Holdings Pty Ltd.*, Case No. 13-cv-01759, 2015
     WL 433507 (N.D. Cal. Feb. 2, 2015)…………………………………….....14

*Hagberg v. Cal. Fed. Bank FSB*, 32 Cal.4th 350 (2004) ………………………….4

*Hunt v. NBC*, 872 F.2d 289 (9th Cir. 1989)………………………………………10

*In re CBS, Inc.*, 570 F. Supp. 578 (E.D. La. 1983)………………………………10

*ITT Telecom Products Corp. v. Dooley*, 214 Cal.App.3d 307 (1989)…………....4

*NAACP v. Claiborne Hardware Co.,* 458 U.S. 886 (1982)………………………..4

*Navellier v. Sletten*, 29 Cal.4th 82 (2002)………………………………………...12

*N.Y. Times Co. v. United States*, 403 U.S. 713 (1971)……………………...7, 9, 15

*Ohno v. Yasuma*, 723 F.3d 984 (9th Cir. 2013)…………………………………….4

*Pansy v. Stroudsburg*, 23 F.3d 772 (3d Cir. 1994)…………………………….....4, 6

*Perricone v. Perricone*, 292 Conn. 187 (2009)………………………………….2, 5

*Von Saher v. Norton Simon Museum of Arts*, 592 F.3d 954 (9th Cir. 2009)………8

*Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975)……………………………10

*Stanley v. Georgia*, 557 U.S. 564 (1969)…………………………………………..3

## RULES AND STATUTES

Cal. Civ. Pro. Code § 425.16……………………………………………………………1

Fed. R. Civ. P. 12………………………………………………………………15

## OTHER AUTHORITIES

http://politicalconundrum.lefora.com/topic/19425341/WHY-IS-FOX-NATION-HARBORING-THIS-WANNABE-MURDERER (last visited Sept. 21, 2015)…..7

The Petition for Writ of Mandamus of the Center for Medical Progress, Biomax Procurement Services, LLC, and David Daleiden (together, "CMP") should be granted because (1) any injunctive relief in this case, including the temporary restraining order and the District Court's discovery order itself, constitutes an unconstitutional prior restraint on free speech; and (2) the District Court clearly erred by recharacterizing CMP's anti-SLAPP motion as a Rule 56 motion and denying the stay of discovery mandated by Cal. Civ. Pro. Code § 425.16(g).

## I. The TRO, Any Further Injunctive Relief, and the Discovery Order All Constitute Unconstitutional Prior Restraints.

Discovery is inappropriate because NAF fails to allege or forecast any interest that could justify a prior restraint restricting CMP's speech on matters of paramount and legitimate public interest. Moreover, as both NAF's and the District Court's Answers indicate, the discovery order itself is designed to function as an unconstitutional pre-approval procedure for CMP's anticipated speech.

### A. CMP properly preserved the question whether NAF's claim for injunctive relief must be denied as a matter of law.

NAF contends that CMP failed to preserve its argument that no discovery is needed because any injunctive relief against CMP's speech necessarily will constitute an illegal prior restraint. NAF Ans., at 21. This assertion is incorrect. In opposing NAF's motion for temporary restraining order, CMP contended that any such relief would necessarily constitute an illegal prior restraint. Doc. 22, at 15-18. Again, in the anti-SLAPP motion itself, CMP contended at length that the district

court should dismiss any claim for injunctive relief, without taking discovery, because any injunction necessarily would constitute a prior restraint. A058-66.

### B. NAF fails to identify an interest that could justify a prior restraint.

NAF asserts two principal interests to support its request for a gag order: (1) enforcement of CMP's putative "waiver" of its First Amendment rights by signing confidentiality agreements, and (2) the protection of its members from violence, threats, and harassment. *See* NAF Ans., at 8-9, 22-23. Under the facts of this case, each of these interests is insufficient as a matter of law to justify a prior restraint.

### 1. Any "waiver" of CMP's right to speak is plainly unenforceable.

First, NAF argues that CMP putatively "waived" its First Amendment rights by signing confidentiality agreements with NAF before attending its annual meetings. NAF Ans., at 22-23. As discussed in CMP's anti-SLAPP motion, *see* A064-65, NAF's Complaint fails to allege facts sufficient to raise a plausible inference of waiver—let alone the "clear and compelling" showing required by the Supreme Court. *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 145 (1967). And even if such a "waiver" occurred, it would be unenforceable as a matter of public policy.[1]

Waivers of First Amendment rights are not enforceable when they infringe "the 'critical importance' of the right to speak on matters of public concern." *Perricone v. Perricone*, 292 Conn. 187, 220 (2009) (quoting *Leonard v. Clark*, 12 F.3d 885, 891 (1993)). A waiver should not be enforced "if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by

---

[1] NAF argues that CMP failed to argue below that any "waiver" of First Amendment rights is void for public policy. NAF Ans., at 27 n.9. This is plainly incorrect. CMP made this argument in detail in its anti-SLAPP motion. *See* A065-66.

enforcement of the agreement." *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1396 (9th Cir. 1991) (quoting *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987)). In *Davies*, the plaintiff waived his right to seek elective office at the school board, yet ran for office anyway. This Court held that the waiver was unenforceable because it undermined "the most important political right in a democratic system of government: the right of the people to elect representatives of their own choosing to public office," and would "result[] in a limitation of the fundamental right to vote of every resident" of the school district. *Id.* at 1397, 1398.

The public's First Amendment right of access to information of paramount public interest is at least as important. "It is now well established that the Constitution protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). "This freedom (of speech and press) necessarily protects the right to receive." *Id.* (ellipses omitted) (quoting *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943)). "[T]he right to receive ideas is a necessary predicate to the *recipient's* meaningful exercise of his own rights of speech, press, and political freedom." *Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982). "Widespread and uncensored access" to CMP's speech is "critical so that public [can] view the film [and] make its own judgment about its role and significance." *Garcia v. Google, Inc.*, 786 F.3d 727, 731 (9th Cir. 2015) (Reinhardt, J., dissenting from initial denial of emergency rehearing en banc).

For these reasons, numerous cases hold that contractual provisions restricting the right to speak are unenforceable as a matter of public policy when their enforcement would implicate important public interests comparable to the public's

3

First Amendment right to receive speech on matters of public import. *See, e.g.*, *Branzburg v. Hayes*, 408 U.S. 665, 696 (1972) ("[I]t is obvious that agreements to conceal information relevant to commission of crime have very little to recommend them from the standpoint of public policy."); *Pansy v. Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) (recognizing that confidentiality orders suppressing information "important to public health and safety" should not be enforced); *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal.4th 350, 362 (2004) (recognizing absolute privilege against suit based on "the importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity" (quotation omitted)); *see also NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913 (1982) ("[E]xpression on public issues has always rested on the highest rung of the hierarchy of First Amendment values." (quotation omitted)).

In arguing to the contrary, NAF relies exclusively on cases that either involved no prior restraint at all, or that did not involve information of any legitimate public interest. *See* NAF Ans., at 24-25. NAF cites several cases that involved awards of *money damages* after the challenged speech had already taken place. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 665 (1991) (considering "whether the First Amendment prohibits a plaintiff from recovering damages"); *Ohno v. Yasuma*, 723 F.3d 984, 986 (9th Cir. 2013) (addressing "enforcement of foreign-country money judgments"); *Dietemann v. Time, Inc.*, 449 F.2d 245, 245 (9th Cir. 1971) (reviewing a money judgment in favor of plaintiff); *ITT Telecom Products Corp. v. Dooley*, 214 Cal.App.3d 307, 311 (1989) (addressing a "suit for damages"); *see also Brooks v. Vallejo City Unified Sch. Dist.*, Case No. 2:09-cv-1815, 2009 WL 10441783, at *1,

*5 (E.D. Cal. Oct. 30, 2009) (addressing plaintiff's claims *seeking* public disclosure of information). None of these cases implicate or discuss the critical concerns raised by prior restraints at all. Similarly, *Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047 (9th Cir. 2011), did not address any prior-restraint arguments or discuss the First Amendment at all.

The only prior-restraint cases cited by NAF clearly involve information of no legitimate public interest, and thus they provide no support for NAF's argument that the putative "waiver" should be enforced regardless of public policy. *See Perricone*, 292 Conn. at 198 (addressing injunction prohibiting discussion of pending custody proceedings); *DVD Copy Control Ass'n v. Bunner*, 31 Cal.4th 864, 871, 873 (2003) (addressing injunction prohibiting disclosure of DVD encryption codes and algorithms). In fact, these cases expressly indicate that the outcome would have been different had the injunction covered information of legitimate public interest. *See Perricone*, 292 Conn. at 221 ("The agreement does not prohibit the disclosure of information concerning the enforcement of laws protecting important rights, criminal behavior, the public health and safety or matters of great public importance."); *DVD Copy Control*, 31 Cal.4th at 883, 884 ("In this case, the content of the trade secrets neither involves a matter of public concern nor implicates the core purposes of the First Amendment. . . .").[2]

---

[2] The District Court's Answer questions whether NAF's confidentiality agreements are distinguishable from protective orders issued during litigation to govern disclosure of materials produced in discovery. Dist. Ct. Ans., at 5 n.4. CMP respectfully submits that such protective orders involve information to which the parties to litigation would not have access but for the district courts' authority to order discovery, and thus disclosure of such information is uniquely subject to the

NAF argues that permitting CMP's speech for public-policy reasons would sanction "wholesale larceny." NAF Ans., at 30. On the contrary, even "lies used to facilitate undercover investigations actually advance core First Amendment values by exposing misconduct to the public eye and facilitating dialogue on issues of considerable public interest. This type of politically-salient speech is precisely the type of speech the First Amendment was designed to protect." *Animal Legal Def. Fund v. Otter*, -- F. Supp. 3d --, 2015 WL 4623943, at *6 (D. Idaho Aug. 3, 2015).

### 2. NAF's asserted interest in protecting its members from threats and violence by third parties cannot justify a prior restraint.

NAF's asserted interest in protecting its members from harm is speculative. NAF argues that there is a history of harassment and violence against abortion providers, but it identifies no specific acts of violence that have occurred as a result of CMP's highly publicized speech. NAF Ans., at 3-4. Other than anonymous internet comments, it identifies no acts of violence against any persons in the nine weeks since CMP began releasing weekly videos on July 14, 2015. *Id.* at 8-9.

---

district court's control. In any event, just like private contracts, such court-issued protective orders are unenforceable as a matter of public policy when they infringe on public interests, including the public's First Amendment right of access to information of critical public interest. *See, e.g.*, *Pansy v. Stroudsburg*, 23 F.3d 772, 788 (3d Cir. 1994) (stating that if a protective order entered pursuant to settlement agreement "involves issues or parties of a public nature, and involves matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality"); *FTC v. Standard Fin. Mgt. Corp.*, 830 F.2d 404, 412 (1st Cir. 1987) (holding that materials that "are patently matters of significant public concern" must be exempted from sealing under a discovery protective order).

Anonymous internet postings of political hyperbole—however inflammatory or offensive—constitute an extremely common feature of public discourse that cannot possibly justify a prior restraint. For example, both of the threatening statements quoted by NAF at page 9 of its Answer were posted by the same anonymous user of the Fox Nation website, "Joseywhales." *See* http://politicalconundrum.lefora.com/topic/19425341/WHY-IS-FOX-NATION-HARBORING-THIS-WANNABE-MURDERER (last visited Sept. 21, 2015) (collecting screen shots of "Joseywhales" comments). According to his/her online Fox Nation profile, "Joseywhales" is a prolific commenter who has posted 70,000 comments and 190,000 "likes" of comments on this website in the past three years. At various times, "Joseywhales" has also posted comments putatively offering $10,000 for the deaths of Baltimore District Attorney Marilyn Mosby and San Francisco Sheriff Ross Mirkarimi. *Id.*

Such anonymous internet comments fall far short of justifying a prior restraint. "The First Amendment tolerates absolutely no prior judicial restraints of the press predicated upon surmise or conjecture that untoward consequences may result." *N.Y. Times Co. v. United States*, 403 U.S. 713, 725-26 (1971) (Brennan, J., concurring). "If allegations of grave and irreparable danger to national security were insufficient to allow suppression of the Pentagon Papers, then threats to persons involved in making *Innocence of Muslims* could not justify the suppression of speech of great national import in this case either." *Garcia*, 786 F.3d at 731 (internal citation omitted) (citing *N.Y. Times*, 403 U.S. at 714).

7

### C. As conceived by NAF and the District Court, the discovery order is an unconstitutional pre-approval process for CMP's future speech.

Both NAF and the District Court contend that discovery is necessary to assess in advance whether CMP's anticipated speech will implicate sufficient public interests to outweigh NAF's privacy interests and overcome any putative First Amendment "waiver" by CMP. *See* NAF Ans., at 22-23; Dist. Ct. Ans., at 2, 4, 6.

Neither NAF nor the District Court, however, seriously disputes that the **general subject matter** of CMP's anticipated speech is one of extraordinary public interest. In fact, NAF's own allegations in the Complaint confirm that CMP's now-gagged speech is of paramount public interest. *See, e.g.*, Compl., Doc. 1, at ¶¶ 2, 3, 29, 84-86; A119, A129, A151. There can be no dispute that CMP's speech will involve matters of great public interest, when NAF seeks an injunction to prevent *too much* public interest. As is widely known and reported in national and international media, CMP's other videos released to date have concerned fetal tissue procurement practices in the abortion industry, including the alleged sale of fetal tissue for profit and the illegal alteration of abortion methods to procure fetal tissue specimens. This Court may take judicial notice that CMP's speech on these topics has generated enormous public interest, dominating headlines and generating tremendous social media reaction, both favorable and unfavorable, for many weeks. *See Von Saher v. Norton Simon Museum of Arts*, 592 F.3d 954, 961 (9th Cir. 2009).

Rather, both NAF and the District Court conceive of the discovery order as a vehicle for both NAF and the District Court to review the **specific content** of CMP's anticipated speech in advance of publication, to allow the federal court to determine

8

whether and what CMP may lawfully say *before CMP says it*. NAF Ans., at 22-23; Dist. Ct. Ans., at 2-6. Under this conception, the discovery order casts the District Court in the role of pre-publication censor of the content of CMP's future speech— a role that is profoundly at odds with fundamental First Amendment values.

"'[I]t is wholly inconsistent with the philosophy of the First Amendment' for a court to pick and choose which speech and how much of it may be permitted as opposed to being enjoined." *Garcia*, 786 F.3d at 732 (quoting *Stanley*, 394 U.S. at 566). "Indeed, it exacerbates the First Amendment injury for a court to condition the right to speak on a change in the message being expressed." *Id.* In the Pentagon Papers case, "every restraint issued in this case . . . has violated the First Amendment—and not less so because the restraint was justified as necessary to afford the courts an opportunity to examine the claim more thoroughly." *N.Y. Times*, 403 U.S. at 727 (Brennan, J., concurring).

For example, in *Goldblum v. NBC*, 584 F.2d 904 (9th Cir. 1978) (Kennedy, J.), the plaintiff claimed that NBC planned to air a "docu-drama" about his crimes that would jeopardize his right to fair parole proceedings and to a fair trial in a pending civil matter. *Id.* at 905. The district court ordered NBC to produce the video for review prior to broadcast so that the court could review it and determine whether its broadcast would be lawful. *Id.* at 906. "The express and sole purpose of the district court's order to submit the film for viewing by the court was to determine whether or not to issue an injunction suspending its broadcast." *Id.*

On emergency mandamus review, this Court held that the order directing NBC to produce the video for pre-broadcast review constituted an unconstitutional

"threatened interference with the editorial process." *Id.* at 907. "It is a fundamental principle of the first amendment that the press may not be required to justify or defend what it prints or says until after the expression has taken place." *Id.* "The Government has been prohibited from interfering with the editorial process by entering the composing room to give directives as to the content of expression." *Id.* "A procedure thus aimed toward prepublication censorship is an inherent threat to expression, one that chills speech." *Id.* In *Goldbum*, this Court "reviewed the order as if it were itself a prior restraint, since its sole purpose was to aid the court in determining whether to enjoin the broadcast." *Hunt v. NBC*, 872 F.2d 289, 294 (9th Cir. 1989); *see also In re CBS, Inc.*, 570 F. Supp. 578, 581 (E.D. La. 1983) (holding that a similar order to produce footage for pre-broadcast review "was an unconstitutional prior restraint on the media's First Amendment rights").

In accord with these cases, a discovery order whose stated purpose is to allow the District Court to review the content of CMP's speech prior to publication, to scrutinize whether or how much CMP may lawfully say, is itself an unconstitutional prior restraint. "Our distaste for censorship—reflecting the natural distaste of a free people—is deep-written in our law." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). Rather than requiring discovery to assess the lawfulness of CMP's speech prior to publication, the First Amendment requires that the District Court assess CMP's speech *after* it has spoken. "[A] free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand." *Id.* at 559. "Subsequent civil or criminal proceedings, rather than prior restraints, ordinarily are the appropriate sanction for calculated

10

defamation or other misdeeds in the First Amendment context." *CBS, Inc. v. Davis*, 510 U.S. 1315, 1318 (1994) (Blackmun, J., in chambers).

Similarly, the District Court's Answer states that pre-publication review of CMP's speech through discovery is required to police for disclosures of "NAF members' addresses and other personal information" in order to protect "NAF's privacy interests." Dist. Ct. Ans., at 2-3. CMP respectfully submits, however, that such concerns cannot justify either the TRO or the discovery order under the First Amendment. First, "privacy interests" are categorically insufficient to justify a prior restraint on speech on matters of public concern. *Bartnicki v. Vopper*, 532 U.S. 514, 534 (2001). Second, NAF made no showing of any real risk that CMP will actually disclose "NAF members' addresses and other personal information." Dist. Ct. Ans., at 3. NAF has never pointed to any release of "personal information" by CMP other than the names and titles of members of the industry discussing criminal behaviors. *See* A129-32; A150-51. Third, the TRO entered by the District Court did not merely enjoin disclosure of addresses and personal information. It swept much more broadly, enjoining disclosure of any information at all—no matter how significant its interest to the public—ascertained at NAF meetings. A111. "An order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate…" *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968); *see also Bank Julius Baer & Co. v. Wikileaks*, 535 F. Supp. 2d 980, 985 (N.D. Cal. 2008); Amicus Brief of Reporters Committee for Freedom of the Press, at 2-3.

11

## II. The Anti-SLAPP Motion Stayed Discovery by Operation of Law.

NAF continues to insist that the first step of the anti-SLAPP analysis—which addresses whether the anti-SLAPP statute, including the discovery stay, applies in this case—requires consideration of whether CMP "waived" its First Amendment rights. NAF Ans., 16-17. NAF quotes *Navellier v. Sletten*, 29 Cal.4th 82 (2002), as stating that "a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract." NAF Ans., at 17 (quoting *Navellier*, 29 Cal.4th at 94); *id.* at 18. But NAF quotes this statement out of context. The immediately preceding sentence in *Navellier* demonstrates that this "waiver" issue is considered only during the second, "merits prong to the statutory SLAPP definition." *Navellier*, 29 Cal.4th at 94 (holding that breach of contract claim fell within the scope of the anti-SLAPP statute's protections but remanding for consideration of merits of the claim). Indeed, *Navellier* directly rejected the notion that a defendant's purported waiver of constitutional rights rendered the anti-SLAPP statute inapplicable. *See Flatley v. Mauro*, 39 Cal.4th 299, 319 (2006) (analyzing *Navellier*). Thus, CMP can invoke the anti-SLAPP statute's protections *even if* it had "waived" its First Amendment rights. And it is clear from the face of the Complaint that CMP's alleged conduct falls within the scope of the anti-SLAPP statute's protections. *See, e.g.*, *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013) ("California courts have held that pre-publication and pre-production acts such as investigating, newsgathering, and conducting interviews constitute conduct that furthers the right of free speech.").

12

As to the second prong of the anti-SLAPP analysis, NAF points to a number of purported "disputed fact issues" raised by the anti-SLAPP motion. NAF Ans., 19-20. But for each issue, the anti-SLAPP motion contests the legal sufficiency of NAF's Complaint, not whether the allegations are in fact true. First, the anti-SLAPP motion does not contest, as a matter of ultimate fact, "[w]hether CMP's agents knowingly and voluntarily waived their First Amendment rights in executing the confidentiality agreements and non-disclosure agreements." NAF Ans., 19-20. *See* A063 ("NAF *fails to plead any facts* supporting the inference that the purported waiver of constitutional rights was knowing, voluntary, and intelligent."); A064 ("NAF *fails to plead any facts* raising the inference that the purported waiver of First Amendment rights was knowing, voluntary, and intelligent.") (all emphases added).

Likewise, the anti-SLAPP motion does not contest, as matter of ultimate fact, "[w]hether NAF members had a reasonable expectation that they would not be secretly recorded, which must be analyzed in light of all relevant circumstances." NAF Ans., at 20. *See* A094 ("NAF's Complaint *fails to plead facts giving rise to a plausible inference* that the allegedly recorded conversations fall within this definition of 'confidential communications. . . . NAF has not *pleaded any facts* giving rise to the plausible inference that the conversations were confidential."). The anti-SLAPP motion does not factually contest "[w]hether CMP's fraudulent misrepresentations to NAF proximately caused NAF's alleged harms." NAF Ans., at 20. *See* A072 ("Because NAF's Complaint *fails to allege* that Defendants breached their contracts with NAF, any promissory misrepresentation by Defendants could not have proximately cause[d] the harm allegedly sustained by NAF.").

13

NAF also claims that the anti-SLAPP motion raises a factual dispute "[w]hether NAF's promissory fraud claim was barred because NAF had reaffirmed the confidentiality agreement." NAF Ans., at 20. On the contrary, the anti-SLAPP motion pointed out that this reaffirmation appears on the face of the Complaint. A071. In *Goldman v. Seawind Group Holdings Pty. Ltd.*, Case No. 13-cv-01759, 2015 WL 433507 (N.D. Cal. Feb. 2, 2015), the court held that where a plaintiff sues to enforce a contract, the plaintiff has not rescinded the contract and thus is "legally precluded" from bringing a promissory-fraud claim. *Id.* at *11. Relying on *Goldman*, CMP observed that NAF's Complaint sued to enforce precisely the same contracts on which the promissory-fraud claim rested, and thus NAF had "reaffirmed [the agreements] by bringing Counts Five and Six of this case." A071.

Finally, NAF claims that the anti-SLAPP motion required determination of "[w]hether CMP conspired to obtain NAF confidential information and access to NAF meetings by setting up a fake company, assuming false identities, and signing confidentiality agreements with the intent of breaching them." NAF Ans., at 19. This is plainly incorrect. Like any Rule 12(b)(6) motion, the anti-SLAPP motion consistently assumed the truth of any well-pleaded facts, but argued that these allegations were legally insufficient to state claims for relief. A023-104.

Both NAF and the District Court cite *Davis v. Electronic Arts, Inc.*, No. C-10-03328 RS DMR, 2011 WL 2621626 (N.D. Cal. July 5, 2011), for the proposition that the District Court may recharacterize CMP's anti-SLAPP motion as a summary-judgment motion. *See* NAF Ans., 16; A008, A010. But *Davis* plainly is inapposite, because in *Davis* the anti-SLAPP motion expressly argued that the district court

14

should look to evidence beyond the face of the complaint in addressing its affirmative defense. *Davis* involved the misappropriation of the plaintiff's images in the defendant's football video game. 2011 WL 2621626, at *1. The defendant's anti-SLAPP motion specifically relied on "[a] review of *Madden NFL 08* and *Madden NFL 09*," video games that were not contained in or attached to the complaint. *See Davis*, Case 3:10-cv-03328-RS, CM/ECF Doc. 20, at p. 25 of 33; *see also Davis*, 2011 WL 2621626, at *6. Thus, *Davis* acted in accordance with the uncontroversial rule that a motion to dismiss relying on evidence outside the pleadings must be treated as a summary-judgment motion. Fed. R. Civ. P. 12(d). Here, by contrast, neither NAF nor the District Court has identified any matter outside the pleadings on which CMP's anti-SLAPP motion relied.

## CONCLUSION

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "[E]very moment's continuance of the injunctions [against publication] amounts to a flagrant, indefensible, and continuing violation of the First Amendment." *N.Y. Times*, 403 U.S. at 715 (Black, J., concurring). This Court should issue a writ of mandamus directing that all discovery proceedings in the district court should be stayed, that the district court should speedily deny any request for injunctive relief without ordering discovery, and granting such other relief as the Court deems just and proper.

Dated: September 21, 2015                    Respectfully Submitted,


                                             */s/ D. John Sauer*
Catherine W. Short, Esq.; SBN 117442         D. John Sauer
Post Office Box 1313                         James Otis Law Group, LLC
Ojai, California  93024-1313                 231 S. Bemiston Avenue, Suite 800
Tel:  (707) 337-6880                         St. Louis, Missouri 63105
Fax: (805) 640-1940                          Tel: (314) 854-1372
LLDFOjai@earthlink.net                       jsauer@jamesotis.com

Thomas Brejcha
Corrine Konczal
Peter Breen
Thomas More Society
19 La Salle St., Ste. 603
Chicago, Illinois 60603
(312) 782-1680
tbrejcha@thomasmoresociety.org

*Attorneys for Defendants/Petitioners The Center for Medical Progress, Biomax
Procurement Services, LLC, and David Daleiden*

## CERTIFICATE OF SERVICE

9th Circuit Case Number: 15-72844

I hereby certify that I electronically filed the foregoing Reply in Support of Petition for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on **September 21, 2015**.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ D. John Sauer*